I'm here on behalf of Mr. Vived. As the Court is probably aware, I'm relatively new to this case. You're what? Relatively new to this case, as previous counsel is deceased, and I was engaged to argue the case before Your Honors. Unless the Court has something specific it would like me to address, I'm inclined to talk a little bit about the jury instructions and the various problems with those. The defense position here is that the jury instructions were flawed. Several of them were flawed. What United States Supreme Court case are you relying on? The Stelvey-McGuire. It really rises to that level. When you have here a situation where I don't believe that the jury would have found him guilty, if the instructions had not been so flawed, it actually deprived him of a trial on the issues presented by the evidence. The flaws are a combination of court error and ineffective assistance of counsel. So counsel, even if the instructions were correct under California law, your argument is that they were still so flawed that they present a constitutional impediment to his conviction? Well, yes, Your Honor. Actually, the state court actually did find error. They just refused to acknowledge the significance of it. They applied Chapman. They found that it was harmless. Which instruction did the California court find was erroneous? Well, they found not so much the instruction itself being erroneous, but the lack of instruction. They found that actually lesser included that assault to commit, conspiracy to commit simple assault is the lesser included of conspiracy to commit felonious assault. Did the California court explicitly rule that the trial court in this case erred by failing to give that instruction? They found there was insufficient evidence to support the instruction. Exactly. So there was no finding that there was error in failing to give the instruction. No, but they failed to address the fact that the court had before it instructions on, as the lesser included of murder, the court instructed on simple assault, aggravated assault, and involuntary manslaughter. There was no way that the jury had to get to any of those lesser related. They're not even included. So the California court didn't find any error in that? They never even addressed that aspect of it. They did address the pinpoint instruction that was requested about a conspirator who commits an act which is not in furtherance of the conspiracy, and they found that it was error to not give that, but they found that it was harmless under Chapman. I don't think it was harmless in this case. The whole defense that was being relied on here, and under this court's jurisprudence and bashed it very easily, the whole defense that was being relied on is that there was no intent on the part of my client to join a conspiracy to do anything more than perhaps, if anything, a simple assault. And the injuries that were inflicted as a result of that assault were actually very minor, nothing requiring medical attention. Counsel, under California law, must there be a weapon involved to commit the crime of manslaughter? No, of course not, but in a conspiracy to commit murder, which is what he was charged with and acquitted of, there has to be an agreement on what's going to be done. And what they agreed to do, there was no weapon involved in the agreement. But that, nevertheless, doesn't change the fact that you can conspire to commit murder because you can kick someone to death, you can beat someone to death. Sure, but that's not what happened. I wouldn't be making this argument if somebody had got carried away and kicked him in the head and he died as a result of the injuries, but he didn't. Those injuries didn't even require medical attention. What Ray did was so beyond whatever these other people had conceived of, or at least my client would have conceived of, pulling out a knife and, you know, it was a deliberate murder. I mean, he pulled out the knife and he stabbed him four times, a large knife, right in the chest. Yeah, but that's a jury argument that you're now segueing into. It's not a federal constitutional argument that's cognizable and habeas. But the jury was never instructed that if Ray's act was separate from what the others had conspired to do, that they could find them not guilty. That's my point. That was one of the jury flaws, the instructional flaws. The court refused to give that as a pinpoint, even though it was the whole defense theory. And the same, they also refused to give the instruction where the client conspired. What did they conspire to do? Excuse me? What did they conspire to do? Well, they were convicted of conspiring to commit an assault with a deadly, an assault by means of force likely to reduce great bodily injury, GBI. And they were instructed it could be committed by hands and fists if the circumstances so show. Which is true. Which is true, it can. But in this particular case, the assault with the hands and the fists or the feet did not in any way cause great bodily injury. But that doesn't mean that they could not have one minute later or two minutes later or at any time during the fight. Of course, but they did not. But the issue is the conspiracy, what they conspired to do. Exactly. They didn't conspire to inflict minor injury. Well, arguably they did, because that is what they did. But they were not instructed that they could find a conspiracy to inflict minor injury. I mean, the way that it went about going into a party like that and, you know, pulling somebody out and engaging in that kind of behavior, if they wanted to inflict great bodily injury, obviously they could have. But the jury was never given the option of finding a simple assault. The fundamental flaw in Petitioner's contention is that, as discussed in more detail, the evidence did not support a finding that the killing occurred in the course of a simple assault. Petitioner and six companions forced their way into the apartment where they knew they could find the victim, dragged him out of hiding, hit him and kicked him until he was crawling on the floor, surrounded him, continued to kick and hit him. Your Honor, none of those kicks and hits caused any injury. The record reads, he fell to the floor on his hands and knees. He was a sissy. He wasn't injured. It wasn't that kind of a thing right there in front of everybody else. I think that jury could reasonably have found that this was a, well, not a commendable act, not a felonious assault, if they were so instructed. And then whatever this other individual, Ray, had in mind was beyond what anybody else could have thought of. But there were so many flaws with these instructions that they didn't have. And then the jury came back. The jury had a problem. They came back with a question. Do we have to find them all guilty of a conspiracy to commit assault? Or if we find them all guilty of a conspiracy to commit felonious assault, must we find them all guilty of homicide? And they had the all underlined in their instruction. Do we have to paint them all with the same brush? And the judge couldn't answer that. The clear answer was no, but the judge didn't answer them. And that wasn't raised as a separate issue. It was on appeal, but I don't think it's, I would consider that Bolenbach error. I mean, the jury has got to be told, they have to have their questions answered. That is the federal constitutional right to have the jury fully instructed and to understand what they're deciding. Well, you didn't raise an issue about failure to answer jury questions, did you? It was raised in state court, and it was alluded to. I mean, I did not prepare this briefing. I think it's in there. I think it's there. It obviously is a factor the court can consider in what contributed to perhaps a verdict that feels that is unreliable and unjust. Does the court have any other points it would like me to address? I'd also ask the court to look at the sufficiency of the evidence for a second-degree murder based on what my client knew. He was not there in the beginning when lots of the discussions were taking place. He basically arrived there, according to his own testimony, to go to a party, and he saw at the last minute that something was going to go on, and he did go into the house, and he did participate to an extent by his mere presence, if nothing else. But he was, by all accounts, totally shocked at what happened and nothing that he would have expected to have happened. I'll let you serve a minute, and then I have it. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court, Bob Snyder, Deputy California Attorney General for Warden Marshall. I distilled from counsel's argument four points, and I'd like to address those in turn, if I may. The first issue, I think, is how the state court, the Court of Appeal, treated the simple assault problem. And not only did it not find error, but it stated, and this is page 80 of the supplemental excerpts, on this record, no reasonable jury could conclude that appellants had conspired to commit only a simple assault rather than assault by a means so force-likely to produce great bodily injury. Just the number of persons involved, seven against one, indicated that appellants contemplated more than a simple assault. So second, with respect to the natural and probable consequence of the conspiracy, Ms. Marshall, I think, suggests the distinction between what happened to the victim, where he was stabbed with a knife, versus what if he'd been kicked hard in the head. She seemed to say, I think, that that would be a natural and probable consequence. I'm not sure I see the difference. You know, the state of mind of these seven people was, let's go kick his ass. Indeed, this appellant participated in the kicking. Granted, he didn't know, perhaps, that the assailant had a knife, but as a matter of state law, with no federal law to contradict it, a stabbing is a natural and probable consequence of an attack on one person by seven. Third, I wanted to address the issue of what the court told the jurors when they said, and their exact words were, do we have to paint all of these defendants with the same brush? It's not that the judge didn't answer the question. What the court said is, I can't answer that specifically, and this is in the supplemental clerk's transcript that we lodged, but it did refer the jury to former Calgic 6.11, and that defines in great detail what each member of a criminal conspiracy is liable for, and it says such elements as you don't have to be present when the agreement is made, you don't have to know all the other conspirators. You do have to understand the natural and probable consequences of the conspiracy. The fourth and final point I'd like to address, Your Honors, is the issue of sufficiency, and I think the general comment I would make is that it's really not the federal court's role, with all due respect, to second-guess the jury's view of the evidence. The state court said that the second degree murder was a natural and probable consequence of this assault, and as a factual matter, this defendant, according to some of the witnesses, was punching and kicking the victim after he had already been attacked. Counsel, do you agree with opposing counsel that the state court found error in failing to give the pinpoint instruction? Your Honor, I didn't find that. I did want to address that because it's at 84 of the supplemental excerpts. The court said we reject the contention that the trial court heard, and the instruction requested by defendant was interesting because the language was, if you find that a defendant has encouraged a co-defendant to commit an assault on the victim, but that the defendant had no reason to believe that the co-defendant would use a deadly weapon, such as a knife, to commit the assault, then you cannot find that the murder was a natural and probable consequence of the assault encouraged by the defendant. The state court rejected that. It's not accurately reflecting California law, and the Court of Appeal agreed, saying the instruction misstated the law, and the California Supreme Court case that controls that is called Prettyman, a 1996 case, I believe. So the short answer to your question, Your Honor, is no. Unless there are further questions, I would submit it there. It appears not. Thank you. Thank you very much. Rebuttal. There were two pinpoints in the issue, and the pinpoint that I was addressing in argument was not that pinpoint, but the 6.16, which is the standard psychology construction on when a conspirator is not liable for the acts of a co-conspirator, when the co-conspirator acts and, out of turn, does something that's not reasonably foreseen. Thank you, counsel. Thank you to both counsel. The case that's argued is submitted for decision by the court.
judges: Trott, Roth, Rawlinson